**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 21, 2015

LETTER TO COUNSEL

      RE:    *Robert Preston Geisler, Jr. v. Commissioner, Social Security Administration*;
              Civil No. SAG-14-2857

Dear Counsel:

      On September 9, 2014, Plaintiff Robert Preston Geisler, Jr. petitioned this Court to review the Social Security Administration's final decision to deny his claim for Supplemental Security Income. (ECF No. 1).  I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 18).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2014).  This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will deny Mr. Geisler's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).  This letter explains my rationale.

      Mr. Geisler protectively filed a claim for Supplemental Security Income ("SSI") on January 24, 2011.  (Tr. 60, 180-188).  He alleged a disability onset date of February 15, 2009.  (Tr. 180).  His claim was denied initially and on reconsideration.  (Tr. 83-86, 89-90).  A hearing was held on May 22, 2013, before an Administrative Law Judge ("ALJ").  (Tr. 26-52).  Following the hearing, the ALJ determined that Mr. Geisler was not disabled within the meaning of the Social Security Act during the relevant time frame.  (Tr. 9-25).  The Appeals Council denied Mr. Geisler's request for review, (Tr. 1-3), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Mr. Geisler suffered from the severe impairments of mood disorder, attention deficit hyperactivity disorder, personality disorder, anxiety disorder, learning disability, organic mental disorders, and alcohol dependence. (Tr. 14).  Despite these impairments, the ALJ determined that Mr. Geisler retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations:  he can engage in only occasional contact with coworkers, supervisors, and/or the general public due to limitations in social functioning; he can perform only simple, routine, repetitive, 1 or 2 step tasks due to limitations in concentration, persistence or pace; and he requires a job that requires no reading.

*Robert Preston Geisler, Jr. v. Commissioner, Social Security Administration*
Civil No. SAG-14-2857
July 21, 2015
Page 2

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Geisler could perform his past relevant work as a flagger and other jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 20-21).

Mr. Geisler raises three primary arguments on appeal. First, Mr. Geisler takes issue with the ALJ's RFC assessment. Next, Mr. Geisler takes issue with the ALJ's statements at the hearing pertaining to his application for unemployment benefits. Finally, Mr. Geisler argues that the hypothetical the ALJ posed to the VE was inconsistent with his RFC determination. Each argument lacks merit and is addressed below. Also addressed below is the impact of *Mascio v. Colvin*, a recent decision by the United States Court of Appeals for the Fourth Circuit.[1]

Mr. Geisler first takes issue with what he views as discrepancies between the ALJ's evaluation of the medical evidence and his ultimate RFC assessment. On July 1, 2010, Curtis Buler, a "Rehabilitation Technical Specialist," completed an "Exploratory Career Assessment Report." Mr. Buler opined that Mr. Geisler suffered from the following functional limitations: (1) impaired ability to follow complex instructions; (2) impaired ability to read or produce written communication; (3) difficulty initiating tasks without support; (4) limits in interpersonal skills, and history of assaultive behavior; (5) emotional instability interferes with performance; (6) experiences frequent conflict with co-workers or supervisors; and (7) self-reports limitations with memory. (Tr. 258-59). The ALJ assigned Mr. Buler's opinion "moderate weight" because Mr. Buler's opinion that Mr. Geisler "has no physical limitations and maintains the mental capacity to follow basic directions and routine procedures and simple (noncomplex) oral instructions is consistent with the medical evidence, subjective complaints, and treating source opinions that are relevant to the adjudicatory period." (Tr. 19). While Mr. Geisler does not contest the weight the ALJ assigned to Mr. Buler's opinion, Mr. Geisler argues that the ALJ erred by failing to include limitations in his RFC assessment based on Mr. Buler's findings regarding Mr. Geisler's inability to produce written communication, his difficulty in initiating tasks without support, his emotional instability, and his need for frequent repetition and clarification of directions. Pl.'s Mem. 6. Notably, however, by assigning Mr. Buler's opinion "moderate weight," the ALJ was not required to adopt Mr. Buler's findings wholesale. In addition to crediting portions of Mr. Buler's opinion, the ALJ also cited several factors that weighed against its adoption. (Tr. 19) (noting that Mr. Buler's opinion was made prior to the relevant time period and that Mr. Buler is not an acceptable medical source). Accordingly, the ALJ did not err by declining to include all of Mr. Buler's specific findings in his RFC assessment. Moreover, I am not persuaded that the ALJ's RFC assessment does not account for those findings. For example, common sense dictates that if Mr. Geisler is incapable of reading, he also cannot be expected to perform a job that involves writing. Likewise, the ALJ's limitation to "only simple, routine, repetitive 1 or 2 step tasks" surely accommodates any need for frequent repetition and clarification of directions, as well as any difficulty initiating tasks without support.

---

[1] The Fourth Circuit's decision in *Mascio*, 780 F.3d 632 (4th Cir. 2015), was issued after Mr. Geisler filed his Motion for Summary Judgment. However, it was not necessary to afford Mr. Geisler additional time to address *Mascio*'s effect on this case, because he had the opportunity to reply to the Commissioner's Motion for Summary Judgment, which addressed *Mascio*. Def.'s Mem. 7 n.4.

Finally, neither Mr. Buler nor Mr. Geisler has articulated how Mr. Geisler's "emotional instability" interferes with his performance of work-related activities in any particular manner.

The ALJ also assigned "significant weight" to the opinion of Mr. Geisler's treating sources, Dr. Edelstein and Mr. Balius, "including their assessments for simple, routine, repetitive work not involving reading or written instructions." (Tr. 19). Mr. Geisler argues that the ALJ erred by failing to include limitations in his RFC assessment based on those sources' statements that Mr. Geisler would have difficulty performing simple, routine, repetitive tasks if he was under high stress, and that he would have difficulty performing written instructions. Pl.'s Mem. 6-7. First, the ALJ limited Mr. Geisler to a job that involves no reading, which certainly excludes written instructions. Moreover, assigning a medical opinion "significant weight," does not require the ALJ to adopt all of a physician's findings. The ALJ specifically articulated which aspects of Dr. Edelstein's and Mr. Balius's opinion he was adopting, and those aspects did not include their statements regarding the impact of "high stress" on Mr. Geisler's ability to perform simple, routine, repetitive tasks. The ALJ thus did not err by omitting from his RFC assessment a limitation explicitly related to stress. Additionally, the limitation to "only occasional contact with coworkers, supervisors, and/or the general public," likely decreases the level of stress involved in jobs that accommodate Mr. Geisler's RFC assessment.

Mr. Geisler next takes issue with the ALJ's consideration of his application for unemployment insurance benefits. Pl.'s Mem. 7. At the hearing, the ALJ questioned Mr. Geisler about the apparent inconsistency between his statement that he is "ready, able, and willing to work" on his application for unemployment benefits, and his claim before the Social Security administration that he is "unable to work." (Tr. 36-37). Mr. Geisler contends that the ALJ's line of questioning was improper because Mr. Geisler was required by Social Security regulations to apply for unemployment benefits before he could become eligible for SSI. *See* 20 C.F.R. § 416.210. Although the ALJ's opinion states that Mr. Geisler "has applied for [u]nemployment benefits," there is no indication that the ALJ found this factor detrimental to Mr. Geisler's application for SSI. In fact, prior to discussing Mr. Geisler's application for unemployment benefits at the hearing, the ALJ stated: "[n]ow unemployment is not a matter that disqualifies you from Social Security disability." (Tr. 36). Accordingly, while the ALJ's statements at the hearing arguably indicate an impermissible line of reasoning, the final opinion reflects no prejudice to Mr. Geisler.

Third, Mr. Geisler argues that the ALJ erred by relying on the testimony of the VE because the hypothetical that the ALJ posed to the VE did not include the limitation to one or two step tasks in the ALJ's RFC assessment. Notably, however, the laundry laborer position that the VE testified Mr. Geisler was capable of in this case requires reasoning level one. *See* Dictionary of Occupational Titles ("DOT") No. 361.687-018. The DOT explains that reasoning level one requires an employee to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." DOT App'x. C. The VE testified that there are 20,000 positions as a laundry laborer locally, and the existence of that position alone provides substantial evidence for the ALJ's ultimate determination that Mr. Geisler is not disabled. *See Lawler v. Astrue*, No. 09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only

75-100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). Moreover, the other positions on which the ALJ based his decision in this case require reasoning level two.[2] *See* DOT Nos. 372.667-022 (flagger), 318.687-010 (kitchen helper). This court has regularly found that a limitation to one to two step tasks does not preclude jobs that require reasoning level two. *Michel v. Comm'r Soc. Sec. Admin.*, No. SAG-13-2311, 2014 WL 2565900, at *3 (D. Md. June 5, 2014). Accordingly, the ALJ's failure in this case to include a limitation to one or two step tasks in the hypothetical he posed to the VE was harmless error.

Finally, while this case was pending, the Fourth Circuit issued an opinion in *Mascio v. Colvin*, a Social Security Appeal from the Eastern District of North Carolina. In *Mascio*, the Fourth Circuit determined remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d 632, 638 (4th Cir. 2015). Although a similar discrepancy appears to exist in this case, it is critically distinguishable in several respects, and *Mascio* does not require remand.

To understand why this case is distinguishable from *Mascio*, some background is necessary. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Each listing therein,[3] consists of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three

---

[2] The VE did not provide the Dictionary of Occupational Titles numbers of the positions on which her testimony was based. Accordingly, I am unable to determine which of several "assembler" positions she referred to. However, there are multiple "assembler" positions that require a reasoning level of two. *See, e.g.*, DOT Nos. 706.687-010, 706.684-022.

[3] Listing 12.05, which pertains to intellectual disability, and Listing 12.09, which pertains to substance addiction disorders, do not follow this structure.

areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace, at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties as he demonstrates diminished abilities to focus, attend, remember and understand more than simple instructions and perform simple routine tasks. His GAF scores in the 50's range, as assessed by treating sources, are consistent with moderate limitations." (Tr. 15). Thereafter, in Mr. Geisler's final RFC assessment, the ALJ stated that Mr. Geisler "can perform only simple, routine, repetitive, 1 or 2 step tasks due to limitations in concentration, persistence or pace." (Tr.16). In the ALJ's explanation supporting his RFC assessment, the ALJ identified the opinion evidence discussed above, from Dr. Edelstein, Mr. Balius, and Mr. Buler, as specifically supporting his determination that Mr. Geisler is capable of "simple, routine, repetitive 1 or 2 step tasks." (Tr. 19). The ALJ also relied on the opinions of the State agency physicians that Mr. Geisler's mental impairments do not prevent him "from performing simple, spoken instructions and simple routine tasks." (Tr. 17). Because this case involves a step three finding that Mr. Geisler suffers from moderate difficulties in concentration, persistence, or pace, and an RFC limitation to "simple, routine tasks or unskilled work," *Mascio* is implicated. However, three critical factors render this case distinguishable from *Mascio*: (1) the explanation offered by the ALJ at step three, (2) the explanation offered by the ALJ in support of his RFC assessment, and (3) the language used in

*Robert Preston Geisler, Jr. v. Commissioner, Social Security Administration*
Civil No. SAG-14-2857
July 21, 2015
Page 6

the RFC assessment itself. Because the ALJ in this case articulated that it was precisely due to Mr. Geisler's diminished abilities with respect to more-than-simple instructions and more-than-routine tasks that he found moderate difficulties in concentration, persistence, or pace, and because he explicitly related his RFC limitation of "simple, routine, repetitive 1 or 2 step tasks" to Mr. Geisler's difficulties in concentration, persistence, or pace, there is no internal inconsistency in the ALJ's decision. Although, under both *Mascio* and the Social Security regulations,[4] it was improper for the ALJ to base his step three determination on Mr. Geisler's difficulties performing complex tasks (rather than his ability to stay on task), that error was harmless due to the ALJ's thorough explanation at each step.

For the reasons set forth herein, Mr. Geisler's Motion for Summary Judgment (ECF No. 15) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[4] A claimant "may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3).